
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 8, 2006** **United States Bankruptcy Judge**



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ICE MELT PRODUCTS, L.L.C., | § | CASE NO. 05-50549-RLJ-11 |
| | § | |
| DEBTOR | § | |

## MEMORANDUM OPINION AND ORDER

On August 25, 2006, hearing was held on the motion for contempt filed by Carol Clayton Wilson, et al[1] (the "Wilson Parties") by which they requested that the Court find the debtor Ice Melt Products, L.L.C., and its principals C. D. Gray Jr. and Dick Crill, in contempt and that they

[1]The moving parties in this case are Carol Clayton Wilson, Individually and on behalf of A. Mardes Clayton III, Noranne Clayton, in her individual capacity and as Trustee of the Noranne Clayton Living Trust, Theresa Clayton Gregory, Scott Clayton, Individually and as Attorney-in-Fact for Nan Clayton Martin, Community Bank of Raymore, Trustee for William L. Abernathy, W. D. Johnson Jr., for the benefit of Dorothy Haggerty, Timothy S. Brandom, Laura E. Couch, William S. Brandom Jr., Deborah B. Miller, Robert J. Brandom, Thomas M. Scruggs, for the benefit of Lillian Smart, Kern Kenyon, Claudia Kenyon, Abbie J. Burton for the benefit of Lynn Lumbard, Abbie J. Burton for the benefit of Mark Lumbard, Abbie J. Burton for the benefit of Nancy Martin, Abbie J. Burton for the benefit of Susan Martin, Abbie J. Burton for the benefit of Laura Martin, Abbie J. Burton for the benefit of Kathleen Field, and Community Bank of Raymore, Trustee for Jacqueline B. Charno Charitable Lead Trust, Bebe and Tom Dunnicliffe Charitable Lead Trust, David L. Fayman and Faith Fayman Strong.

be punished for their alleged contemptuous acts, including confinement in jail (as to Gray and Crill); and that the Court award the Wilson Parties costs and attorney's fees for pursuing the motion. The Wilson Parties contend that the operations and activities of Ice Melt Products, L.L.C., as directed by its principals Gray and Crill, have violated and continue to violate the permanent injunction contained in the judgment issued on April 19, 2005, by the 132nd District Court of Borden County, Texas (the "Final Judgment"). Ice Melt denies that its operations violate the Final Judgment and thereby requests that the Court deny the motion for contempt.

The Final Judgment grants three forms of relief: declaratory relief, money damages, and injunctive relief. It also sets forth the following definitions of terms that are applicable to the forms of relief granted by the state court:

> As used in this Final Judgment the following terms have these meanings:
>
> A. "Lease Agreement" refers to a certain Lease Agreement between Plaintiffs and Snyder Magnesium Co., Inc. recorded in Volume 255, page 149, of the Deed Records of Borden County, Texas.
>
> B. "Amendment to Lease Agreement" refers to a document entitled "Amendment to Lease Agreement" and dated July 6, 2000 but effective December 5, 1999 which amended and modified the terms of the Lease Agreement.
>
> . . . .
>
> C. "Surface Deed" refers to a Deed dated July 6, 2000 from CAROL CLAYTON WILSON, Individually and on behalf of A. MARDES CLAYTON, III, NORANNE CLAYTON, in her individual capacity and as Trustee of the NORANNE CLAYTON LIVING TRUST, THERESA CLAYTON GREGORY as Grantors and Ice Melt Products, L.L.C. as Grantee and which is recorded at Volume 276, page 538 of the Deed Records of Borden County, Texas.
>
> E. "Surface Deed Restriction" refers to that deed restriction in the Surface Deed which provides that "Only brine water produced under and pursuant to that one certain 'Lease Agreement' recorded at Volume 255 Page 149 Deed Records of Borden County, Texas may be may be [sic] stored or processed on the Property."

F. "Pipelines" refers to the pipelines underlying the property of Plaintiffs which pipelines are not under the Surface Deed Property.

G. "Surface Deed Property" refers to the 310.42 acres more particularly described in the Surface Deed.

H. "Lease Agreement Property" refers to the property covered in the Lease Agreement being Sections 10, 11, 13, 15 and 21, Block 31, Township 4 North, T. & P. Ry. Survey, Borden County, Texas.

The declaratory relief contained in the Final Judgment states, in relevant part, as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Plaintiffs' request for declaratory relief be and the same are hereby granted as follows:

A. The Amendment to Lease Agreement modified and amended the terms of the Lease Agreement as more specifically set forth in the terms of the Amendment to Lease Agreement;

B. The Amendment to Lease Agreement became effective on December 5, 1999 and thereafter amended the terms of the Lease Agreement as specifically set forth in the terms of the Amendment to Lease Agreement;

. . . .

E. The Lease Agreement as amended by the Amendment to Lease Agreement be and is hereby terminated effective as of December 5, 2004;

F. The Surface Lease expired at the end of its stated primary term, March 15, 2000, and as such the Surface Lease be and is hereby terminated effective as of March 15, 2000;

G. The Surface Deed Restriction prohibits Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc. from storing or processing brine water on the Surface Deed Property except for brine water produced from the Lease Agreement Property;

H. Because the Lease Agreement as amended by the Amendment to Lease Agreement has terminated, Defendants, Snyder Magnesium, Inc. Co., [sic] Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc. are prohibited from storing or processing brine water on the Surface Deed Property;

I. The right of Defendants, Snyder Magnesium Co., Inc., Texas Magnesium,

Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc., to utilize the Pipelines to transport brine water, water and/or such other substances, including, but not limited to, water, salts, metals, elements, fluids and compounds onto the Surface Deed Property terminated at such time as the Lease Agreement as amended by the Amendment to Lease Agreement terminated;

J. The Surface Deed did not convey an easement to Ice Melt Products, L.L.C. to utilize the Pipelines to transport brine water, water and/or such other substances, including, but not limited to water, salts, metals, elements, fluids and compounds produced from wells other than wells located on the Lease Agreement Property;

K. Defendants, Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc. are prohibited from using the Pipelines to transport brine water, water and/or such other substances, including, but not limited to, water, salts, metals, elements, fluids and compounds produced from the wells located on the Lease Agreement Property as the Lease Agreement as amended by the Amendment to Lease Agreement has terminated; and

L. Defendants, Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C. and Snyder Specialty Co., Inc. are prohibited from using the Pipelines to transport brine water, water and/or such other substances, including, but not limited to, water, salts, metals, elements, fluids and compounds water [sic] produced from wells located on properties not owned by any of the Plaintiffs.

M. The Amendment to Lease Agreement, Surface Deed and Promissory Note was entered into as part of one overall transaction.

The injunctive relief set forth in the Final Judgment states as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Defendant, Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc., and their successors and/or assigns are commanded forthwith to desist and refrain from using any of the Pipelines to transport brine water, water and/or such other substances, including but not limited to water, salts, metals, elements, fluids and compounds, produced from any of the wells located on the Lease Agreement Property.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Defendants Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc., and their successors and/or assigns are commanded forthwith to desist and refrain from using

> any of the Pipelines to transport brine water, water and/or such other substances, including but not limited to water, salts, metals, elements, fluids and compounds produced from any wells located on properties not owned by Plaintiffs.
>
> . . . .
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Ice Melt Products, L.L.C. and its grantees, successors and/or assigns, are commanded forthwith to desist and refrain from storing or processing on the Surface Deed Property brine water, water, and/or other liquid substance, other than brine water produced from wells located on the Lease Agreement Property.

Finally, the court awarded the following monetary relief:

> IT IS FURTHER ORDERED, ADJUDGED and DECREED, that the Plaintiffs have and recover judgment against Snyder Magnesium Co., Inc. and Texas Magnesium, L.L.C., jointly and severally, the sum of $114,347.99.
>
> IT IS FURTHER ORDERED, ADJUDGED and DECREED, that the Plaintiffs, Carol Clayton Wilson, A. Mardes Clayton, III, Noranne Clayton, Individually and as Trustee of the Noranne Clayton Living Trust, and Theresa Clayton Gregory, have and recover judgment against Ice Melt Products, L.L.C. in the sum of $12,500.00.
>
> IT IS FURTHER ORDERED, ADJUDGED and DECREED, that Plaintiffs have and recover judgment against Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C. and Snyder Specialty Co., Inc., jointly and severally, in the amount of $80,000.00.

As set forth in the definitional section of the Final Judgment, the Surface Deed Property refers to a 310.42-acre tract which was conveyed to Ice Melt on July 6, 2000, by the Surface Deed. Other than referring to the Surface Deed Property as the "310-acre tract," the Court will use the terminology and definitions as set forth in the above quoted provisions of the Final Judgment.

The Surface Deed reserved to the grantors, in whose position the Wilson Parties stand, the minerals, and sets forth the following restriction concerning the use of the 310-acre tract:

> The use of the Property shall be limited to the brine water operations which are being

> conducted on the Property and any additional processing of the brine water products and by-products. No other type of operations shall be conducted on the Property. No hunting shall be permitted on the Property. Only brine water produced under and pursuant to that one certain "Lease Agreement" recorded at Volume 255 Page 149, Deed Records of Borden County, Texas may be stored or processed on the Property. The Property shall remained [sic] fenced sufficient to keep livestock from the adjacent lands from entering onto the Property.

A temporary injunction was issued against Ice Melt on June 19, 2003, which specifically enjoined Ice Melt from producing brine water from the Lease Agreement Property. Prior to the temporary injunction, Ice Melt was pumping water from two wells, designated as the "Clayton" wells, both of which are located on the Lease Agreement Property. Upon issuance of the preliminary injunction, Ice Melt ceased pumping water from the Clayton wells and began pumping water from other wells, named the "Hull No. 1" and the "Hull No. 2," which are not located on the Lease Agreement Property, but are located on lands described as "across the road" from the Lease Agreement Property. Water provided from the two Hull wells did travel through the pipeline located on the Lease Agreement Property, however. Ice Melt stopped using the Hull wells upon issuance of the Final Judgment because, as set forth above, the Final Judgment provided that Ice Melt held no easement or rights to the pipelines that carried water from the two Hull wells across the Lease Agreement Property to the 310-acre tract.

From April 19, 2005, when the Final Judgment was issued, through Ice Melt's chapter 11 filing in early May of 2005, and during the pendency of this chapter 11 case, Ice Melt, from its perspective, was carrying on its various activities and operations in a manner that did not violate the Final Judgment as it was not pumping any water offsite (off the 310-acre tract) to the 310-acre tract. Ice Melt did not, however, cease commercial activities when it stopped moving water onto the 310-acre tract. In fact, since the filing of this chapter 11 case, its operating reports reflect that

it has generated in excess of $700,000 in revenues and presently has approximately $100,000 on hand. It has maintained payments on its secured debt and has, apparently, paid its post-petition obligations as they have come due. It has, as well, carried out a pollution-prevention plan labeled the Storm Water Pollution Prevention Plan (the "Pollution Plan"). The Pollution Plan was enacted as a means to comply with the requirements of the Texas Commission on Environmental Quality (the "TCEQ"). The Pollution Plan abates a potential pollution problem on the Surface Deed Property resulting from seepage and runoff from the 310-acre tract, and specifically addresses potential environmental violations raised by the TCEQ. In implementing the Pollution Plan, Ice Melt has performed certain "dirt work" on the 310 acres, which includes the digging of additional pits (or "catch basins") that capture rainwater, followed by the pumping of the captured rainwater to the evaporating ponds located on the 310-acre tract. As a result of Ice Melt's activities undertaken in connection with the Pollution Plan, it produces additional marketable brine water that can be sold as a drilling fluid. In summary, Ice Melt can carry on a viable commercial operation, at least in the short run, by exploiting the 310-acre tract for the production of brine water through the use of captured rainwater that falls on the 310 acres and water that exists and remains on the site.

The question, then, is whether Ice Melt's present activities are such that they violate the Final Judgment to the point of constituting contempt. The parties specifically agreed that the Wilson Parties would "enforce the injunction set forth in the Final Judgment only through this Court during the pendency of this case . . . ."[2] The Wilson Parties contend that Ice Melt's present

[2]Such agreement is set forth in the Agreed Order Lifting the Automatic Stay to Permit Enforcement of Injunctions in State Court Lawsuit and Allow Movants to Withdraw Money from the Registry of the State Count, entered by the Court March 3, 2006. The Agreed Order specifically provides that:

activities and those contemplated by their plan of reorganization violate the permanent injunction issued within the Final Judgment. The Wilson Parties submit that Ice Melt's conduct must be considered in light of the activities and operations it has carried on since the issuance of the temporary injunction in June of 2003.

From the issuance of the temporary injunction in June of 2003, up until issuance of the Final Judgment, the Court cannot conclude that Ice Melt was acting in a manner that violated any order in place at the time. Ice Melt ceased pumping water from the two Clayton wells located on the Lease Agreement Property, just as the injunction directed. The injunction also specifically stated that notwithstanding the injunction, it did not "infringe upon, deter, inhibit, limit, prohibit, or deny [Ice Melt's] operations on the 310 acres . . . ."

The relief granted under the Final Judgment is obviously more expansive. Upon issuance of the Final Judgment, on April 19, 2005, Ice Melt, as noted above, ceased use of the Hull wells as directed. The declaratory relief granted in the Final Judgment states that the Surface Deed Restriction prohibits Ice Melt from storing or processing brine water on the 310 acres, except for brine water produced from the Lease Agreement Property. It then flatly declares that, given the termination of the Lease Agreement, Ice Melt is prohibited from storing or processing brine water on the Surface Deed Property. To compliment such declaratory relief, the permanent injunction states that Ice Melt must refrain from storing or processing on the 310-acre tract "brine water,

---

the stay afforded by 11 U.S.C. Section 362 be, and it hereby is, lifted to allow the District Clerk of the 132nd Judicial District of Texas to issue and serve on Debtor the permanent injunctions as set forth in the Final Judgment ("Final Judgment") dated April 19, 2005 in Cause No. 1128 in the 132nd District Court of Borden County, Texas and to permit Movants to enforce the injunctions set forth in the Final Judgment only through this Court during the pendency of this case and thereafter in the 132nd District Court of Borden County, Texas."

water, and/or other liquid substance, other than brine water produced from wells located on the Lease Agreement Property." The injunction portion of the Final Judgment can be interpreted to be less broad than the declaratory relief. If read alone, one can infer from the declaratory relief that Ice Melt cannot conduct *any* activity on the Surface Deed Property; in effect, it owns the 310 acres without any real benefit associated with such ownership. On the other hand, one can infer from the injunction that Ice Melt would still be allowed to produce brine water from the 310-acre tract so long as the brine water (or water used to create the brine water) is residual water that came from the Lease Agreement Property. In this regard, both Gray and Crill testified that the 310-acre tract retained more water than they expected it would after Ice Melt ceased pumping water to the 310-acre tract. They also speculated that some of the water on the 310-acre tract came from the Clayton wells. At most, it can be inferred that Ice Melt's activities since the filing of this bankruptcy case are based on the use of water that was either on the 310-acre tract at such time (regardless of the source) or from rainwater that has been collected and retained since the filing.

Ice Melt's particular mix of activities in light of the specific relief granted by the Final Judgment raises several questions with the Court. For example, if Ice Melt can produce brine water (or some related product) from water that was pumped from wells located on the Lease Agreement Property, has Ice Melt violated the permanent injunction if such water is mixed (commingled?) with water that was pumped from the Hull wells or with water that results from rainfall? In addition, if marketable brine water is characterized as a byproduct of Ice Melt's efforts to address potential runoff and seepage under the Pollution Plan, is Ice Melt, in effect, prohibited from selling the brine water? Or can it sell the brine water to cover the expenses

associated with such efforts? Can Ice Melt sell any mineral, presumably salt, that would not constitute a liquid? The big picture question is, can Ice Melt conduct *any* activity on the 310-acre tract, and have the Wilson Parties ever asserted that the Final Judgment and permanent injunction must be construed to prevent Ice Melt from conducting any activity on the 310-acre tract?

The precise issue before the Court is whether Ice Melt and its principals should be held in contempt for violating the Final Judgment. The Court's contempt power should only be invoked if a specific aspect of the injunction has been clearly violated. *See Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999). The mere fact that the above questions are raised (and others as well) militates against a finding of contempt. Simply stated, it is difficult to justify a contempt finding upon assessing Ice Melt's present activities against the precise terms of the Final Judgment. Too many gray areas emerge from the analysis. Although the Court holds that Ice Melt's conduct does not rise to the level of contempt for purposes of the motion before it, the Court is not necessarily concluding that Ice Melt's activities should be allowed in the future.

Upon the foregoing, it is hereby

ORDERED that the relief requested by the motion for contempt filed by the Wilson Parties is denied.

### End of Memorandum Opinion and Order ###