

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed May 21, 2007            **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ICE MELT PRODUCTS, L.L.C., | § | CASE NO. 05-50549-RLJ-11 |
| | § | |
| DEBTOR | § | |

**MEMORANDUM OPINION**

On May 14, 2007, hearing was held on the Debtor's Motion to Establish Procedure for Complying with Environmental Regulations and Accounting for Funds Received and the Motion to Enforce Injunction in State Court Judgment of Carol Clayton Wilson, et al[1] (the "Wilson

---

[1] The moving parties on the motion are Carol Clayton Wilson, Individually and on behalf of A. Mardes Clayton III, Noranne Clayton, in her individual capacity and as Trustee of the Noranne Clayton Living Trust, Theresa Clayton Gregory, Scott Clayton, Individually and as Attorney-in-Fact for Nan Clayton Martin, Community Bank of Raymore, Trustee for William L. Abernathy, W. D. Johnson Jr., for the benefit of Dorothy Haggerty, Timothy S. Brandom, Laura E. Couch, William S. Brandom Jr., Deborah B. Miller, Robert J. Brandom, Thomas M. Scruggs, for the benefit of Lillian Smart, Kern Kenyon, Claudia Kenyon, Abbie J. Burton for the benefit of Lynn Lumbard, Abbie J. Burton for the benefit of Mark Lumbard, Abbie J. Burton for the benefit of Nancy Martin, Abbie J. Burton for the benefit of Susan Martin, Abbie J. Burton for the benefit of Laura Martin, Abbie J. Burton for the benefit of Kathleen Field, and Community Bank of Raymore, Trustee for Jacqueline B. Charno Charitable Lead Trust, Bebe and Tom Dunnicliffe Charitable Lead Trust, David L. Fayman and Faith Fayman Strong.

Parties").[2]

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

Ice Melt Products, L.L.C. ("Ice Melt") filed this chapter 11 case on May 5, 2005. The motions before the Court raise, for the fourth time during this bankruptcy case, the question of whether certain activities either ongoing or contemplated by Ice Melt violate the final judgment issued on April 19, 2005, by the 132nd District Court of Borden County, Texas (the "Final Judgment").[3] By the present motion, Ice Melt is requesting that the Court approve a so-called

---

[2]In addition to the Motion to Enforce Injunction in State Court Judgment, the Wilson Parties, by the same pleading, submitted their Response to Debtor's Motion to Establish Procedure for Complying with Environmental Regulations and Accounting for Funds Received, by which they opposed the relief requested by the debtor's motion.

[3]The Final Judgment was issued in connection with a lawsuit filed by the Wilson Parties against Ice Melt and other defendants. The Final Judgment grants three forms of relief in favor of the Wilson Parties: declaratory relief, money damages, and injunctive relief. It also sets forth the following definitions of terms that are applicable to the forms of relief granted by the state court:

As used in this Final Judgment the following terms have these meanings:

A. "Lease Agreement" refers to a certain Lease Agreement between Plaintiffs and Snyder Magnesium Co., Inc. recorded in Volume 255, page 149, of the Deed Records of Borden County, Texas.

B. "Amendment to Lease Agreement" refers to a document entitled "Amendment to Lease Agreement" and dated July 6, 2000 but effective December 5, 1999 which amended and modified the terms of the Lease Agreement.

C. "Surface Deed" refers to a Deed dated July 6, 2000 from CAROL CLAYTON WILSON, Individually and on behalf of A. MARDES CLAYTON, III, NORANNE CLAYTON, in her individual capacity and as Trustee of the NORANNE CLAYTON LIVING TRUST, THERESA CLAYTON GREGORY as Grantors and Ice Melt Products, L.L.C. as Grantee and which is recorded at Volume 276, page 538 of the Deed Records of Borden County, Texas.
. . . .

E. "Surface Deed Restriction" refers to that deed restriction in the Surface Deed which provides that "Only brine water produced under and pursuant to that one certain 'Lease Agreement' recorded at Volume 255 Page 149 Deed Records of Borden County, Texas may be may be [sic] stored or processed on the Property."

F. "Pipelines" refers to the pipelines underlying the property of Plaintiffs which pipelines are not under the Surface Deed Property.

G. "Surface Deed Property" refers to the 310.42 acres more particularly described in the Surface Deed.

H. "Lease Agreement Property" refers to the property covered in the Lease Agreement being Sections 10, 11, 13, 15 and 21, Block 31, Township 4 North, T. & P. Ry. Survey, Borden County, Texas.

The declaratory relief contained in the Final Judgment states, in relevant part, as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Plaintiffs' request for declaratory relief be and the same are hereby granted as follows:

A. The Amendment to Lease Agreement modified and amended the terms of the Lease Agreement as more specifically set forth in the terms of the Amendment to Lease Agreement;

B. The Amendment to Lease Agreement became effective on December 5, 1999 and thereafter amended the terms of the Lease Agreement as specifically set forth in the terms of the Amendment to Lease Agreement;

. . . .

E. The Lease Agreement as amended by the Amendment to Lease Agreement be and is hereby terminated effective as of December 5, 2004;

F. The Surface Lease expired at the end of its stated primary term, March 15, 2000, and as such the Surface Lease be and is hereby terminated effective as of March 15, 2000;

G. The Surface Deed Restriction prohibits Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc. from storing or processing brine water on the Surface Deed Property except for brine water produced from the Lease Agreement Property;

H. Because the Lease Agreement as amended by the Amendment to Lease Agreement has terminated, Defendants, Snyder Magnesium, Inc. Co., [sic] Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc. are prohibited from storing or processing brine water on the Surface Deed Property;

I. The right of Defendants, Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc., to utilize the Pipelines to transport brine water, water and/or such other substances, including, but not limited to, water, salts, metals, elements, fluids and compounds onto the Surface Deed Property terminated at such time as the Lease Agreement as amended by the Amendment to Lease Agreement terminated;

J. The Surface Deed did not convey an easement to Ice Melt Products, L.L.C. to utilize the Pipelines to transport brine water, water and/or such other substances, including, but not limited to water, salts, metals, elements, fluids and compounds produced from wells other than wells located on the Lease Agreement Property;

K. Defendants, Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc. are prohibited from using the Pipelines

      to transport brine water, water and/or such other substances, including, but not limited to, water, salts, metals, elements, fluids and compounds produced from the wells located on the Lease Agreement Property as the Lease Agreement as amended by the Amendment to Lease Agreement has terminated; and

      L. Defendants, Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C. and Snyder Specialty Co., Inc. are prohibited from using the Pipelines to transport brine water, water and/or such other substances, including, but not limited to water, salts, metals, elements, fluids and compounds water [sic] produced from wells located on properties not owned by any of the Plaintiffs.

      M. The Amendment to Lease Agreement, Surface Deed and Promissory Note was entered into as part of one overall transaction.

The injunctive relief set forth in the Final Judgment states as follows:

      IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Defendant, Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc., and their successors and/or assigns are commanded forthwith to desist and refrain from using any of the Pipelines to transport brine water, water and/or such other substances, including but not limited to water, salts, metals, elements, fluids and compounds, produced from any of the wells located on the Lease Agreement Property.

      IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Defendants Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C., and Snyder Specialty Co., Inc., and their successors and/or assigns are commanded forthwith to desist and refrain from using any of the Pipelines to transport brine water, water and/or such other substances, including but not limited to water, salts, metals, elements, fluids and compounds produced from any wells located on properties not owned by Plaintiffs.

. . . .

      IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that Ice Melt Products, L.L.C. and its grantees, successors and/or assigns, are commanded forthwith to desist and refrain from storing or processing on the Surface Deed Property brine water, water, and/or other liquid substance, other than brine water produced from wells located on the Lease Agreement Property.

Finally, the court awarded the following monetary relief:

      IT IS FURTHER ORDERED, ADJUDGED and DECREED, that the Plaintiffs have and recover judgment against Snyder Magnesium Co., Inc. and Texas Magnesium, L.L.C., jointly and severally, the sum of $114,347.99.

      IT IS FURTHER ORDERED, ADJUDGED and DECREED, that the Plaintiffs, Carol Clayton Wilson, A. Mardes Clayton, III, Noranne Clayton, Individually and as Trustee of the Noranne Clayton Living Trust, and Theresa Clayton Gregory, have and recover judgment against Ice Melt Products, L.L.C. in the sum of $12,500.00.

      IT IS FURTHER ORDERED, ADJUDGED and DECREED, that Plaintiffs have and recover judgment against Snyder Magnesium Co., Inc., Texas Magnesium, Inc., Texas Magnesium, L.L.C., Ice Melt Products, L.L.C. and Snyder Specialty Co., Inc., jointly and severally, in the amount of $80,000.00.

"facility closure plan." The facility closure plan contemplates Ice Melt's continued commercial activities on the 310.42-acre tract, the usage of which is the very subject of the Final Judgment, by the production and marketing of liquid by-products, magnesium and salt brine, and the solid by-product salt. In addition to these activities, it should be noted that Ice Melt purchases and resells salt brine from a sister company as a means to generate revenue.

According to Ice Melt, the facility closure plan will effect the "removal of product from the 310.42 acres in the form of accumulated salt in both solid and liquid form . . . with an eye toward facility closure." Ice Melt further submits that the principal goal of the facility closure plan is to address, in the most efficient manner, the environmental concerns associated with release of contaminants (i.e. salt) onto adjoining lands that may ultimately flow to the Colorado River.

As stated, the Court has on three prior occasions addressed Ice Melt's activities and whether such activities violate the Final Judgment. First, Ice Melt filed an adversary proceeding seeking declaratory relief and authority from this Court to drill two water wells to be used in connection with its operations on the 310.42-acre tract. By its Memorandum Opinion entered on February 17, 2006, in adversary number 05-5024, the Court granted summary judgment in favor of the Wilson Parties, concluding that the Final Judgment barred such activity. Second, by its Memorandum Opinion and Order signed on September 8, 2006, the Court denied a motion for contempt filed by the Wilson Parties as against Ice Melt and its principals in which the Wilson Parties contended that the operations of Ice Melt and the use of the 310.42-acre tract was such

that it justified issuance of contempt as against such parties. While the Court denied the relief on the basis that it was difficult to justify a contempt finding upon assessing Ice Melt's activities against the precise terms of the Final Judgment, it also stated that it was "not necessarily concluding that Ice Melt's activities should be allowed in the future." Third, the Court denied confirmation of Ice Melt's chapter 11 plan of reorganization in which it proposed continued operations on the facility; the Court issued its ruling on the record and held that Ice Melt's plan violated section 1129(a)(3) of the Bankruptcy Code which requires that a plan be proposed in good faith and not be forbidden by law. This ruling was premised on the Court's conclusion that the contemplated operations did indeed violate the terms of the Final Judgment.

As with the proposed plan that was denied confirmation, the facility closure plan will likely generate significant revenues. In fact, Ice Melt states that it can pay its creditors in full, including its two major secured creditors and the Wilson Parties (on the money judgment portion of the Final Judgment). This would inure to the benefit of the principals of Ice Melt, Dick Crill and C. D. Gray Jr., as they are also obligated on the secured debts of Ice Melt. The facility closure plan states that Ice Melt will, by May 2008, begin funding a reserve fund from gross revenues to use for further remediation.

The problem is that Ice Melt's present proposal, as it relates to the Final Judgment, is no different than its prior attempts at and proposals of plans that continue operations on the 310.42-acre tract. As the Court noted in its September 8, 2006 Memorandum Opinion and Order issued on the Wilson Parties' motion for contempt, the surface deed by which Ice Melt acquired the 310.42-acre tract contains the following restriction regarding the use of the 310.42-acre tract (referred to as the "Property"):

> The use of the Property shall be limited to the brine water operations which are being conducted on the Property and any additional processing of the brine water products and by-products. No other type of operations shall be conducted on the Property. No hunting shall be permitted on the Property. Only brine water produced under and pursuant to that one certain "Lease Agreement" recorded at Volume 255 Page 149, Deed Records of Borden County, Texas may be stored or processed on the Property. The Property shall remained [sic] fenced sufficient to keep livestock from the adjacent lands from entering onto the Property.

The Court, construing the Final Judgment, stated as follows:

> The declaratory relief granted in the Final Judgment states that the Surface Deed Restriction prohibits Ice Melt from storing or processing brine water on the 310 acres, except for brine water produced from the Lease Agreement Property. It then flatly declares that, given the termination of the Lease Agreement, Ice Melt is prohibited from storing or processing brine water on the Surface Deed Property. To compliment such declaratory relief, the permanent injunction states that Ice Melt must refrain from storing or processing on the 310-acre tract "brine water, water, and/or other liquid substance, other than brine water produced from wells located on the Lease Agreement Property."

The injunction set forth in the Final Judgment clearly enjoins Ice Melt's continued production of brine water and magnesium as is contemplated by the facility closure plan.[4]

The Final Judgment, which resulted from litigation over the transactions between Ice Melt and the Wilson Parties, requires, in effect, that Ice Melt obtain the Wilson Parties' consent to any contemplated commercial activities on the 310.42-acre tract. The bankruptcy filing does not alter this reality. The Court is mindful of potential environmental problems resulting from the seepage and runoff of salt from the 310.42-acre tract, but it is also aware that the Wilson Parties own the land that surrounds the 310.42-acre tract. The Court was told at the hearing that neither the state nor the federal government will intervene to cleanup the site or to remediate salt contamination

---

[4] It does not appear that the Final Judgment would prohibit Ice Melt from selling dry salt as a solid by-product. The mechanical removal of dry salt is the last phase of the facility closure plan. Indeed, the Wilson Parties' counsel has stated that the Wilson Parties would have no opposition to Ice Melt's continued commercial disposition of the solid salt that has accumulated at the 310.42-acre tract.

given that salt is not a hazardous substance. If that is in fact true, the party most directly impacted by salt contamination are the owners of the adjacent property, the Wilson Parties. They contend through their attorney that the Colorado River Authority will "get involved" to prevent contamination of the Colorado River. To the extent environmental problems do exist or may arise, this Court can only conclude that such issues are best left to the parties most directly impacted and, to the extent applicable, the appropriate regulatory or governmental authorities. This Court has no authority to approve the facility closure plan that is proposed here; the Court has already denied confirmation of Ice Melt's reorganization plan.

This case has now been pending for two years. Ice Melt, through the good efforts of its counsel, has attempted to salvage a potentially viable operation, but, given the severe restrictions imposed upon it by the very deed that conveyed the 310.42-acre tract to Ice Melt, and as such deed has been construed and is to be enforced by the Final Judgment, Ice Melt's prospects of reorganization at the time this case was filed were tenuous at best given its relationship with the Wilson Parties. The Wilson Parties stand on the relief accorded them under the Final Judgment; this Court must stand on the terms of the Final Judgment. The relief requested by Ice Melt will be denied. The Court will enter an order denying the relief requested and will specifically provide that the contemplated activities in accordance with the facility closure plan violate the terms of the Final Judgment. The Court will further direct that a hearing will be held on June 26, 2007, at 1:30 P.M., at which time the Court will consider conversion of this case to chapter 7 or dismissal of the case.

### End of Memorandum Opinion ###